**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

MICHELLE CAMERON,

    Plaintiff,

v.                                              Civ. No. 19-841 GJF/KK

DIANE GUTIERREZ,

    Defendant.

**ORDER GRANTING IN PART
DEFENDANT'S MOTION TO COMPEL RULE 35 EXAMINATION**

THIS MATTER is before the Court on Defendant Diane Gutierrez' Motion to Compel Independent Medical Examination (Doc. 29) ("Motion"), filed July 14, 2020. Plaintiff Michelle Cameron[1] filed a response in opposition to the Motion on August 11, 2020 (Doc. 39); and, Defendant filed a reply in support of it on August 18, 2020. (Doc. 42.) The Court, having reviewed the parties' submissions, the record, and the relevant law, FINDS that the Motion is well-taken in part and should be GRANTED IN PART and DENIED IN PART as set forth herein.

**I. Introduction**

This diversity action arises out of an automobile accident in which Defendant's vehicle allegedly struck Plaintiff's vehicle from behind. (Doc. 1 at 1-2; Doc. 39 at 1.) On the basis of this accident, Plaintiff has asserted a negligence claim against Defendant, seeking damages for lost income and for "past and future" medical expenses, loss of household services, pain and suffering, and loss of enjoyment of life. (Doc. 1 at 3-4.) In the present Motion, Defendant asks the Court to compel Plaintiff to undergo a neuropsychological examination pursuant to Federal Rule of Civil Procedure 35. (Doc. 29 at 1, 8.) Defendant further asks the Court to order the examination to be

---

[1] Plaintiff is now known as Michelle Cardin. (*See, e.g.*, Doc. 29 at 1; Doc. 39 at 6.)

conducted by John King, Ph.D., the first portion virtually and the second portion in person in Albuquerque, New Mexico.  (*Id.* at 5, 8.)  Plaintiff opposes Defendant's request for a Rule 35 examination, and also argues that, if an examination is ordered, she should not be required to travel to New Mexico to submit to it at present.  (Doc. 39 at 1-4.)

## II.  Factual Background

In her complaint, Plaintiff alleges that she was driving to the airport in Albuquerque on or about November 23, 2017 "when her car was struck from behind by a vehicle driven by [Defendant]."  (Doc. 1 at 1-2; Doc. 39 at 1.)  Plaintiff was working in New Mexico temporarily when the accident occurred.  (Doc. 39 at 3.)  She currently resides in Kentucky.  (*Id.*)

*Inter alia*, Plaintiff claims that she suffered a concussion and post-concussion syndrome as a result of the accident.  (*See, e.g.*, Doc. 29 at 3; Doc. 39 at 2-3; Doc. 42 at 3-5; Doc. 42-1 at 3-4.)  She asserts that her doctor prescribed four weeks of brain rest to treat these injuries, which prevented her from working, engaging in most recreational activities, and traveling to spend Christmas with her son.  (Doc. 42-1 at 3-4.)  She further claims that she was unable to find employment for four additional weeks because of these injuries.[2]  (*Id.* at 3.)

In her interrogatory answers, Plaintiff attributed several ongoing mental and emotional issues to the concussion and post-concussion syndrome, including slow, disorganized speech, difficulty finding words, very slow recall of information, difficulty reading, increased anger, and depressed and withdrawn mood.  (*Id.* at 3-4.)  She stated that she "continues to struggle with memory and anger management issues.  She has learned to take a lot of notes to help her memory and continues to receive treatment for anger management."  (*Id.* at 5.)  Also, she asserted that

---

[2] Altogether, Plaintiff claims that she lost almost $16,000 in income due to the concussion and post-concussion syndrome.  (Doc. 42-1 at 3.)

"concussions have a cumulative effect," and, as such, she "is now more vulnerable to a more serious brain injury if she suffers another concussion." (*Id.*)

At her deposition, which occurred about two months after she served her interrogatory answers, Plaintiff testified that her "recall issues have improved over time" and her "head cleared up" around February 2018. (Doc. 23; Doc. 39 at 6, 12-13.) In this regard, she explained that "one day [she] woke up and – [she] wouldn't say it was a hundred percent better, but [she] could just tell a big difference." (Doc. 39 at 12-13.) Plaintiff also testified that her speech "got better," and she has been able to perform all of her job duties "[w]ithout any issues" since around February 2018. (*Id.* at 13.) Additionally, she testified that though she "seem[s] to get angry easier than [she] used to" and "feel[s] like it happened after the wreck," she "do[es]n't know if it was from the concussion." (*Id.* at 8.)

Plaintiff was diagnosed with multiple sclerosis in 2009. (Doc. 29 at 2; Doc. 29-1 at 2.) To treat this disease, she has received infusions of Tysabri, a medication that modifies the immune system.[3] (Doc. 29 at 2; Doc. 29-1 at 2; Doc. 39 at 3.) Plaintiff was involved in a prior auto accident in early 2016, as a result of which she was transported to the emergency room by ambulance and suffered chest bruises and a possible knee impact. (Doc. 29-1 at 4.) In May 2016, Plaintiff fell while getting out of bed, bumping her head and bruising her right hip. (*Id.* at 3.)

### III. Legal Standards

A.   <u>Legal Standards Governing Rule 35 Orders Generally</u>

Rule 35 provides that "[t]he court where the action is pending may order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination

---

[3] *See* https://medlineplus.gov/druginfo/meds/a605006.html (last visited Sept. 4, 2020) (Tysabri, or natalizumab, "is in a class of medications called monoclonal antibodies. It works by stopping certain cells in the immune system from reaching the brain and spinal cord or digestive tract and causing damage.").

by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a)(1). "The order . . . may be made only on motion for good cause and . . . must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." Fed. R. Civ. P. 35(a)(2).

A party seeking a Rule 35 examination must affirmatively demonstrate both that the physical or mental condition of the party to be examined is "in controversy" and that "good cause" exists for the examination. *Schlagenhauf v. Holder*, 379 U.S. 104, 117 (1964); *O'Sullivan v. Rivera*, 229 F.R.D. 184, 186 (D.N.M. 2004). "[T]here must be greater showing of need under [Rule 35] than under the other discovery rules"; to accept a showing of mere relevance would render the "good cause" requirement "meaningless." *Schlagenhauf*, 379 U.S. at 117-18; *O'Sullivan*, 229 F.R.D. at 186. "While Rule 35 should be construed liberally in favor of granting discovery, its application is left to the sound discretion of the court." *Simpson v. Univ. of Colo.*, 220 F.R.D. 354, 362 (D. Colo. 2004) (citations omitted).

As a general proposition, the Supreme Court long ago recognized that "[a] plaintiff in a negligence action who asserts mental or physical injury . . . places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury." *Schlagenhauf*, 379 U.S. at 119 (citation omitted). Lower courts have since refined this rule with respect to mental injuries, in light of the facts that (a) "[m]ental examinations, by their nature, are intrusive and implicate sensitive matters," *Ornelas v. S. Tire Mart, LLC*, 292 F.R.D. 388, 395 (S.D. Tex. 2013), and (b) it would be "untoward" to order Rule 35 examinations "routinely in automobile accident cases." *Schlagenhauf*, 379 U.S. at 121-22. Thus, one district court observed that courts have generally ordered plaintiffs to undergo mental examinations only

>where the cases involve . . . one or more of the following: 1) a cause of action for intentional or negligent infliction of emotional distress; 2) an allegation of a specific mental or psychiatric injury or disorder; 3) a claim of unusually severe emotional distress; 4) plaintiff's offer of expert testimony to support a claim of emotional distress; and/or 5) plaintiff's concession that his or her mental condition is "in controversy" within the meaning of Rule 35(a).

*Gattegno v. Pricewaterhousecoopers, LLP*, 204 F.R.D. 228, 231 (D. Conn. 2001). And, other district courts have concluded that a "crucial element necessary to ordering a mental examination is the existence of an allegation of present, ongoing, or permanent mental injury or disorder." *Ornelas*, 292 F.R.D. at 394 (quotation marks omitted); *Bowen v. Parking Auth. of City of Camden*, 214 F.R.D. 188, 195 (D.N.J. 2003).[4]

B.     Legal Standards Governing the Location of Rule 35 Examinations

"The general rule" regarding the location of Rule 35 examinations "is that a plaintiff who brings suit in a particular forum may not avoid appearing for an examination in that forum." *Ornelas*, 292 F.R.D. at 399–400; *see also, e.g., Sanchez v. Swift Transp. Co. of Ariz., L.L.C.*, No. PE: 15-CV-15, 2016 WL 10588049, at *3 (W.D. Tex. June 22, 2016) (same); *Mansel v. Celebrity Coaches of Am., Inc.*, No. 2:13-CV-01497-JAD, 2013 WL 6844720, at *1 (D. Nev. Dec. 20, 2013) ("[C]ourts have developed a general rule that plaintiffs should submit to the examination in the forum in which they chose to bring suit.") (quotation marks omitted).[5] "[T]his rule ensures that the examining specialist is available as an expert witness at trial," and accounts for the fact that "the facilities and equipment an examiner needs are likely at his place of practice." *Ornelas*, 292 F.R.D. at 400.

---

[4] To the extent that the *Gattegno* and *Ornelas* standards are not entirely consistent, the Court notes that "[t]he Rule 35 inquiry has been deemed intensively fact-specific, which contributes to the inconsistent rulings issuing from federal courts." *Ornelas*, 292 F.R.D. at 391 (quotation marks omitted).

[5] "The rule is not changed by the fact that a plaintiff may have selected the forum by necessity." *Ornelas*, 292 F.R.D. at 400 n.7.

5

To be excepted from this general rule, a plaintiff must "show that traveling to the examination poses undue burden or hardship." *Sanchez*, 2016 WL 10588049 at *3; *Ornelas*, 292 F.R.D. at 400; *see also New v. Rush Truck Leasing*, No. CV 17-134-HRW, 2018 WL 3236991, at *2 (E.D. Ky. July 2, 2018) ("The caselaw favors placing the burden upon the plaintiff to demonstrate that traveling to the examination poses an undue burden or hardship."). A plaintiff's burden "is not met through general assertions," but rather "requires specific evidence." *Mansel*, 2013 WL 6844720 at *2. In determining whether a plaintiff has met this burden, courts have considered such factors as

> the plaintiff's medical conditions, the amount and time of travel that the plaintiff has been willing to undertake on his or her own while burdened with the physical conditions, the specific evidence from the plaintiff's doctor of the harm that would result from the travel to the [Rule 35 examination], and the specific medical expertise needed that is not available locally.

*New*, 2018 WL 3236991 at *2 (citing cases); *see also, e.g., Vandergriff v. Red Robin Int'l, Inc.*, No. 1:14-CV-177-SKL, 2016 WL 1735857, at *1, *4 (E.D. Tenn. May 2, 2016) (court declined to order minor plaintiff to travel to Rule 35 examination in light of treating physician's refusal to clear minor plaintiff to fly, minor plaintiff's seizure disorder, and mother's pregnancy). The Court will consider Defendant's Motion in light of the foregoing standards.

**IV. Analysis**

In her Motion, Defendant asserts that a Rule 35 examination is necessary in this case to identify the extent of Plaintiff's neuropsychological injuries, the permanency of those injuries, and the likelihood that the accident at issue caused those injuries. (Doc. 29 at 2.) As Defendant observes, Plaintiff claims that she suffered the specific mental injuries of a concussion and post-concussion syndrome as a result of the accident. In her interrogatory answers, Plaintiff attributed substantial damages and ongoing mental and emotional issues to these injuries. She also stated

6

that, due to these injuries, she is now more vulnerable to a serious brain injury if she suffers another concussion.  In addition, Plaintiff disclosed a preexisting medical condition and prior accidents that could have caused or contributed to some or all of the neuropsychological symptoms she has attributed to the accident at issue.  For these reasons, Defendant asserts that Plaintiff's mental condition is in controversy and there is good cause for a Rule 35 neuropsychological examination. (Doc. 42 at 2-6.)

Plaintiff disagrees.  In her response to Defendant's Motion, Plaintiff argues that she "has recovered from the post-concussion syndrome and is not claiming that she has any current problems related to the concussion," and that her deposition testimony

> makes it clear that any cognitive and speech problems have resolved and that she cannot say that her anger issues are caused by the concussion. Therefore, a neuropsychological examination would not provide Defendant with any useful information.

(Doc. 39 at 3.)

In the Court's view, Plaintiff's argument is not wholly without merit and does suggest that a Rule 35 neuropsychological examination at this juncture may not be prodigiously enlightening. Nevertheless, the Court must ultimately reject Plaintiff's position because her deposition testimony does not disclaim "any current problems related to the concussion" as completely and conclusively as she suggests.  (*Id.*)  For example, though Plaintiff testified that her "recall issues have improved," she did *not* testify that they have fully resolved; likewise, though she testified that her head "cleared up," her testimony could reasonably be read to say that it is not "one hundred percent better."  (*Id.* at 12-13.)  The deposition testimony on record does not directly address her difficulty reading; and, perhaps most significantly, she does not appear to have retreated from her claim that she is now more vulnerable to a serious brain injury if she suffers another concussion.  (*See* Doc. 42-1 at 5.)

7

In short, on the current record, Plaintiff is still claiming "a specific mental or psychiatric injury or disorder," *Gattegno*, 204 F.R.D. at 231, with at least one "present, ongoing, or permanent" effect. *Ornelas*, 292 F.R.D. at 394. In these circumstances, and in light of the record evidence that other factors may have caused or contributed to Plaintiff's neuropsychological symptoms, Defendant has shown that Plaintiff's mental condition is in controversy and there is good cause to require Plaintiff to submit to a Rule 35 neuropsychological examination. The Court will therefore grant Defendant's Motion insofar as it seeks an order compelling Plaintiff to undergo such an examination.

However, the Court will excuse Plaintiff from traveling to New Mexico to submit to the requested Rule 35 examination, provided she appropriately documents her inability to do so safely. Defendant asks the Court to apply the general rule and compel Plaintiff to appear for part of the examination in New Mexico, "the state where Plaintiff brought her suit." (Doc. 42 at 6-7.) Plaintiff opposes this request, arguing that

> [h]aving to fly or drive to New Mexico to undergo a neuropsychological examination would subject [Plaintiff] to greater health risks than other people. [Plaintiff] has [multiple sclerosis] and is therefore immunocompromised. She must be very careful to avoid contact with anyone who might have the corona virus. Traveling by car or air would be very dangerous for her because she could not avoid contact with other people.[6]

(Doc. 39 at 3.)

Defendant does not dispute that Plaintiff has multiple sclerosis and has received a medication that modifies the immune system. As such, and in light of the COVID-19 pandemic,

---

[6] In addition, Plaintiff notes that, if she were required to travel to New Mexico for a Rule 35 examination at present, she might "be required to self-quarantine and probably would not be able to participate in an examination until after she had been here for fourteen days." (Doc. 39 at 4); *see* N.M. Dep't of Health, "Social Distancing and Travel Restrictions," https://cv.nmhealth.org/travel-recommendations/ (last visited Sept. 4, 2020). This burden seems disproportionate to the usefulness of the proposed Rule 35 examination, particularly in light of Plaintiff's testimony that most of her neuropsychological symptoms have improved or resolved.

8

Plaintiff could well face an elevated risk of serious harm or death if she were to travel from Kentucky to New Mexico to submit to a Rule 35 examination.[7] The Court will thus allow Plaintiff thirty (30) days from the date of this Order to provide Defendant with documentation from a licensed medical provider to the effect that, in the provider's opinion, travel from Kentucky to New Mexico at this time presents a medically unacceptable level of risk to Plaintiff. If Plaintiff provides such documentation, the examination must be conducted in such a way that Plaintiff can remain in Kentucky. Defendant may select the neuropsychologist who will perform the examination; however, it must take place virtually and/or at a reasonable distance from Plaintiff's residence.[8] If Plaintiff does not timely provide Defendant with the specified documentation or seek an extension of time in which to do so, the Rule 35 examination may proceed in the locations Defendant has requested, *i.e.*, virtually and in person in Albuquerque, New Mexico.

As previously noted, a Rule 35 order should "specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." Fed. R. Civ. P. 35(a)(2). However, the Court has insufficient information to rule on these particulars at present. The Court will therefore require counsel to confer with one another regarding the time, place, manner, conditions, and scope of the proposed examination, and the person or persons who will perform it, in light of this Order. *Cf. Ornelas*, 292 F.R.D. at 398 ("[M]ost courts have found that

---

[7] The United States Centers for Disease Control and Prevention ("CDC") website indicates that, based on current data, people in an "[i]mmunocompromised state (weakened immune system) from . . . use of . . . immune weakening medicines . . . might be at an increased risk for severe illness from COVID-19." https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Sept. 4, 2020) (emphasis omitted). The CDC's website also notes that "[l]arge in-person gatherings where it is difficult for individuals to remain spaced at least 6 feet apart and attendees travel from outside the local area"—including, presumably, airports—present the highest risk of spreading COVID-19. *Id.*

[8] Circumstances relevant to the reasonableness of the distance from Plaintiff's residence may include, for example, the proximity of Plaintiff's residence to one or more cities large enough to offer Defendant a selection of neuropsychologists, in the event Defendant decides to use a local neuropsychologist rather than pay for Dr. King to travel to Kentucky.

9

the failure to provide the requisite particulars regarding the examination does not necessitate denial of a motion proceeding under Rule 35.  Instead, a court may grant a request for examination . . . subject to a mandate that the parties confer regarding the specifics.") (citations omitted).  If counsel are able to reach an agreement, they may proceed accordingly without further assistance from the Court.  Alternatively, Defendant may submit a proposed stipulated order that satisfies Rule 35's requirements.  If counsel cannot agree regarding the examination's particulars, the parties may simultaneously submit competing proposed orders.

IT IS THEREFORE ORDERED that Defendant Diane Gutierrez' Motion to Compel Independent Medical Examination (Doc. 29) is GRANTED IN PART and DENIED IN PART.  The motion is granted in that Plaintiff is hereby ordered to submit to a neuropsychological examination pursuant to Federal Rule of Civil Procedure 35.  The motion is denied in that the examination must take place virtually and/or in Kentucky at a reasonable distance from Plaintiff's residence, provided Plaintiff timely supplies Defendant with documentation from a licensed medical provider to the effect that travel from Kentucky to New Mexico at this time presents a medically unacceptable risk to Plaintiff.  Plaintiff must supply the specified documentation within thirty (30) days of entry of this Order.  If Plaintiff fails to do so, the examination may proceed in the locations Defendant has requested.

IT IS FURTHER ORDERED that counsel must confer with one another regarding the time, place, manner, conditions, and scope of the proposed examination, and the person or persons who will perform it, in light of this Order.  If counsel are able to reach an agreement regarding these particulars, they may proceed accordingly without further assistance from the Court; alternatively, Defendant may submit a proposed stipulated order to khalsaproposedtext@nmd.uscourts.gov.  If

counsel cannot agree regarding the examination's particulars, the parties may simultaneously submit competing proposed orders to the same address.

    IT IS SO ORDERED.

*/s/ Kirtan Khalsa*
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE